# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 3037 | **DATE** | 11/4/2004 |
| **CASE TITLE** | Cocke vs. Risk Management Alternatives, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 11/23/2004 at 9:30 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Ruling held. **ENTER MEMORANDUM OPINION:** We find that class certification would not provide an efficient nor appropriate means to resolve the present matter. Accordingly, Cocke's motion (Doc 8-1) for class certification is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | NOV 0 9 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | JXM | 20 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| SCT | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KATHERINE COCKE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 04 C 3037 |
| | ) | |
| RISK MANAGEMENT ALTERNATIVES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

DOCKETED
NOV 9 2004

## **MEMORANDUM OPINION**

CHARLES P. KOCORAS, Chief District Judge:

This matter comes before the court on Plaintiff Katherine Cocke's ("Cocke") motion for class certification. For the reasons set forth below, the motion is denied.

## **BACKGROUND**

In a motion for class certification, the court accepts as true all well-pleaded allegations made in support of certification. Hardin v. Harshbarger, 814 F. Supp. 703, 706 (N.D. Ill. 1993). In 2003, Cocke agreed to pay off her mother's outstanding credit card debt that was being collected by the Defendant Risk Management Alternatives ("RMA"). Cocke and RMA entered into an agreement that included a payment schedule. The agreement permitted RMA to withdraw funds from Cocke's checking account. The payment schedule provided that Cocke would make an initial payment



of $1127.09, followed by regular monthly payments of $200.00, until the debt was fully paid. Cocke claims that RMA never informed her that generating checks against her account would result in a $40.00 service charge.

On June 24, 2003, RMA sent a letter labeled "post dated check confirmation" to Cocke's mother. This letter indicated that RMA would withdraw $1127.09 from Cocke's checking account on June 27. However, on July 9, RMA withdrew $1167.09 from Cocke's checking account, $40.00 more than the agreed amount. This charge caused Cocke's account to be overdrawn, resulting in Cocke's bank imposing a $31.00 overdraft charge. When Cocke called RMA to investigate the discrepancy, she was informed that $40.00 was the standard fee charged for the electronic withdrawal of checks. According to Cocke, this was the first time she was informed of this fee.

During this phone call, Cocke requested that RMA refund the $40.00 fee and pay her $31.00 to compensate her for the overdraft charge. RMA agreed to reimburse Cocke the $71.00 in fees by deducting that amount from the scheduled July payment; RMA would withdraw $129.00 from Cocke's checking account for the month of July but credit $200.00 toward the debt. However, in its July 21 confirmation letter, RMA indicated that it would withdraw the full $200.00 payment from Cocke's account. Cocke contacted RMA immediately and was assured that the mistake would be corrected.

Instead of correcting the matter, RMA allegedly generated three checks against Cocke's account totaling $403.00. Because two of the three checks were presented against a negative balance, Cocke's bank charged her two additional overdraft fees, totaling $62.00. Curiously, only $400.00 was credited toward the debt. This amount exceeded Cocke's authorized amount by $271.00 and did not account for the additional $3.00 charged by RMA.

When Cocke contacted RMA about the withdrawals, a supervisor agreed that no funds would be withdrawn from Cocke's account in the month of August. Nonetheless, RMA sent a confirmation letter in August indicating that $127.00 would be withdrawn from Cocke's account and applied toward the debt. Cocke alleges that when August arrived, RMA withdrew both the $127.00 it indicated in the confirmation letter and an additional $206.00. Cocke's account once again fell below zero and her bank imposed a $93.00 fee for the three additional overdrafts. In addition, several checks that Cocke had already written and sent to service providers and other creditors for that month were returned for lack of sufficient funds. Cocke's bank imposed additional charges and several of her accounts were reported as more than 30 days past due on her credit history.

After only receiving partial repayment of the unauthorized withdrawals RMA made, Cocke filed the present action, alleging that RMA violated subsections (e) and

(f) of the Fair Debt Collection Practice Act ("FDCPA"), 15 U.S.C. §§ 1692 et seq. and Section 2 of the Illinois Consumer Fraud Act, 815 ILCS 505/2. Cocke now requests that this court certify two classes pursuant to Federal Rule of Civil Procedure 23.

Cocke proposes two classes: a "national class" and an "Illinois class." The national class would consist of (a) all natural persons (b) against whose bank accounts RMA generated and presented one or more checks (c) who were charged a fee as a result (d) where either the fee was collected on or after a date one year prior to the filing of this action, or RMA communicated within such period to the payor or the debtor a balance that did not reflect all payments being applied to the amount of the debt, exclusive of fees, and (e) for whom RMA cannot produce a record showing agreement to the fee. The Illinois class would consist of all persons who are members of the national class, and who also satisfy any one of the following three criteria: (a) the person's address is in Illinois; (b) RMA's Illinois office carried out the transaction involving the individual; or (c) the financial institution on which the check was drawn is in Illinois.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 23(a), there are four threshold requirements for federal class actions: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Harriston v. Chicago Tribune Co., 992 F.2d 697,

703 (7th Cir. 1993). In addition, at least one of the three factors listed in Fed. R. Civ. P. 23(b) must be satisfied. Amchem Products, Inc. v. Windsor, 521 U.S. 591, 613-614 (1997). Given the facts as alleged in the complaint, Rules 23(b)(1) and 23(b)(2) do not come into play in the present action. Rule 23(b)(3) is implicated because it requires that questions of law or fact common to all class members predominate over questions affecting only individual members and that a class action is the superior method of adjudicating the case. Cocke has the burden of establishing that the proposed classes satisfy both Rules 23(a) and 23(b)(3). Retired Chicago Police Ass'n v. City of Chicago, 7 F.3d 584, 596 (7th Cir. 1993); Harriston, 992 F.2d at 703. If it appears that the suit cannot proceed consistent with Rule 23 requirements, the court has the power to revoke or alter class certification at any time before final judgment. Fed. R. Civ. P. 23(c)(1)(c).

## DISCUSSION

As a preliminary matter, the court must address Cocke's reply in support of her motion for class certification. Cocke's complaint alleges that RMA repeatedly collected sums in excess of the amounts to which she agreed, namely the $40 electronic withdrawal fee. The complaint further contends that RMA used false, misleading, or deceptive means to collect the fee by not disclosing that generating checks would cost Cocke that fee. In essence, Cocke's claim is based on the collection of the fee in the

-5-

absence of consent. However, in her reply, Cocke improperly attempts to rephrase her claim against RMA. Specifically, she states that it is RMA's failure to document consent in an objectively verifiable manner that is at issue here.

The distinction between acquiring consent and documenting consent is significant, and Cocke may not change her theory of the case in her reply brief. Fenster v. Tepfer & Spitz, Ltd., 301 F.3d 851, 859 (7th Cir. 2002). Rather, she can only do so by requesting leave to file an amended complaint pursuant to Fed. R. Civ. P. 15. Accordingly, this ruling will address the matter in relation to Cocke's claims only as they are stated in her complaint.

Cocke's request to certify two classes is analogous to instances where the court divides a potential class into two subclasses in order to account for differences in proof that may be required at trial. See Oswald v. General Motors Corp., 594 F.2d 1106, 1129 n.38 (7th Cir. 1979). Here, differences in proof may exist because the elements of a FDCPA claim are slightly different from those of an Illinois Consumer Fraud Act claim. Thus, as a preliminary matter, Cocke's request to certify two separate classes is appropriate. Both classes, however, must independently meet the requirements of Fed. R. Civ. P. 23. Id.

## A. *Definiteness of Plaintiff's Proposed Classes*

Because the outcome of a class action suit is binding on all unnamed class members, it is crucial to have a clear definition of the individuals who are included in a class. Alliance to End Repression v. Rochford, 565 F.2d 975, 978 n.6 (7th Cir. 1977). Because of *res judicata*, courts have held that there is a "definiteness" requirement implied in Rule 23(a). Id. at 977. RMA argues that the classes proposed by Cocke are ill-defined, subjective, and imprecise. Specifically, RMA contends that it was not required to give written notice of the fees at issue and that oral notification was sufficient. Because there was oral notification, RMA continues, the only way to conclusively decide whether potential members of the class belong there is to determine what each debtor was told at the time they entered into the agreement. We agree with RMA's assertion.

RMA is correct that, as a general rule, an action based substantially on oral rather than written communication is inappropriate for treatment as a class action suit. Retired Chicago Police Ass'n, 7 F.3d at 598 n.17. This action, based upon the content of the allegations, potentially falls into this category of cases. Section (e) of the national class definition injects imprecision and subjectivity into the class description. Cocke alleges in her complaint the absence of any notification by RMA regarding the $40.00 fee charged for electronic withdrawal service. This notification could have

-7-

taken the form of either oral or written agreements between the parties. The absence of notification, or, put another way, the failure to obtain consent, either oral or written, injects too many disparate factual scenarios into the present cause of action, rendering class certification inappropriate.

Often a class description is found to be indefinite because class membership is based on the state of mind of the prospective class members. Alliance to End Repression, 565 F.2d at 978. Here, the state of mind of the prospective class members regarding authorization or consent to the fee is directly at issue. Both of Cocke's proposed classes, the national class and the Illinois class, fail to meet the first threshold requirement of definiteness, embodied in Rule 23(a).

*B. Numerosity*

The next criteria that Cocke must establish is that joinder of all putative class members would be impracticable. Fed. R. Civ. P. 23(a)(1). Class certification is not precluded simply because it may be difficult to determine the exact number of class members, and a finding of sufficient numerosity may be based upon common sense assumptions so long as they are not purely speculative. Vergara v. Hampton, 581 F.2d 1281, 1284 (7th Cir. 1978); In re VMS Securities Litigation, 136 F.R.D. 466, 473 (N.D. Ill. 1991); Marcial v. Coronet Ins. Co., 880 F.2d 954, 957 (7th Cir. 1989). Ultimately, the issue to be addressed is the practicability of joining RMA's

"customers" who participated in the same post-dated check program as the plaintiff. See Wadleigh, v. Rhone-Poulenc Rorer, Inc., 157 F.R.D. 410, 415 (N.D. Ill. 1994). RMA is a leading provider of accounts receivable management that counts among its clients 35 of the top 50 banks in the country and seven of the top 10 retail stores and retail credit card providers. It is likely that potential class members are dispersed throughout the fifty states. See id. Further, RMA has indicated that it processed at least 497,330 electronic checks during the class period. The large number of electronic checks involved, the geographic dispersion of potential class members, as well as RMA's use of form letters like those received by Cocke satisfies the numerosity requirement for both the proposed national class. See Peters v. AT & T Corp., 179 F.R.D. 564, 566-67 (N.D. Ill. 1998).

The proposed Illinois class deserves separate comment here because the geographic dispersion of potential Illinois class members presents less of an impediment to the practicability of joinder than it does in the national class. Nonetheless, with nearly half a million electronic checks processed during the class period, it is very likely that enough individuals in Illinois have been impacted by RMA's alleged conduct that joinder of all putative class members would be impracticable. As such, the proposed Illinois class also satisfies the numerosity requirement of Rule 23(a)(1).

*C. Commonality*

Where class members' grievances derive from a common nucleus of operative fact, Rule 23(a)(2)'s commonality requirement will be satisfied. Rosario v. Livaditis, 963 F.2d 1013, 1017-18 (7th Cir. 1992). RMA argues that Cocke's motion for class certification should be denied because she has failed to properly allege standardized conduct toward the putative class members. Specifically, RMA argues that Cocke will need to rely on oral telephone conversations that each potential class member had with RMA representatives.

Here, section (e) of Cocke's proposed class, regarding authorization or consent to RMA's fee, once again serves as a substantial impediment to class certification. The individualized nature of each transaction, and the specific factual differences that may arise, can only be considered on a case by case basis. Therefore, Cocke has not satisfied the requirement of commonality.

*D. Typicality*

Typicality is closely related to the question of commonality. Keele v. Wexler, 149 F.3d 589, 595 (7th Cir. 1998). The typicality requirement is intended to ensure that Cocke will act in the best interests of class members who take a less active part in managing the litigation. In assessing typicality, the court focuses on whether Cocke's

claims have the same essential characteristics and are based on the same legal theories as those of the other class members. Retired Chicago Police Ass'n, 7 F.3d at 596-97.

RMA claims that Cocke has not satisfied this requirement because she has overlooked the possibility that some of the putative class members may have entered into a written agreement that allows for the collection of a fee. Cocke briefly asserts that typicality is inherent in the proposed class definitions, in that the members would only include those that RMA did not obtain consent from, already excluding those who did consent. This argument is unconvincing. Even assuming that distinction, the particulars of RMA's conduct with respect to obtaining consent (or failure to do so) injects inquires that are intensely factual in nature. Class actions are intended to be used as a tool to promote judicial efficiency and judicial economy. Attempting to ascertain, for each putative class member, which individuals did in fact consent, either in writing or orally, or did not consent to RMA's fee, would constructively eliminate whatever efficiency or economy could potentially be gained from allowing this case to proceed as a class action suit. Accordingly, Cocke has failed to satisfy the requirement of typicality.

*E. Adequacy of Representation*

Under Fed. R. Civ. P. 23(a)(4), Cocke must also establish that she will adequately represent and protect the interests of the class by (1) employing qualified

and experienced counsel able to conduct the proposed litigation and (2) not having interests antagonistic to those of the class members. Id. at 598. Initially, we note that Cocke's counsel has presented sufficient credentials to assure competent and vigorous prosecution of this case.

RMA argues that Cocke's role as a third-party payor creates a standing problem, or alternatively, that her claim is somehow weaker than those of the putative classes. See Mintz v. Mathers Fund, Inc., 463 F.2d 495, 498-99 (7th Cir. 1972); Robinson v. Sheriff of Cook County, 167 F.3d 1155, 1157 (7th Cir. 1999). The court notes that Cocke has standing under § 1692k(a) of the FDCPA, which provides that any debt collector who violates the Act "with respect to any person is liable to such person." Second, we have no reason to presume that Cocke's claim is particularly weak when compared to other putative class members paying off their own debts.

Additionally, Cocke's interests do not conflict with those of the other members of the putative classes. Both Cocke and the class members seek monetary damages from RMA for their alleged violation of the FDCPA and the Illinois Consumer Fraud Act. Cocke's interests would potentially mirror those of the putative class members and her interest in the outcome of this litigation is sufficient to ensure vigorous advocacy. We therefore conclude that Cocke would provide fair and adequate representation of the class.

*F. Predominance of Common Questions and Superiority of the Class Method*

We next turn to the provisions of Fed. R. Civ. P. 23(b)(3), under which it is appropriate to certify a class where (1) questions of law or fact common to the members of the class predominate over any questions affecting only individual members and (2) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The predominance requirement of Rule 23(b)(3) is more demanding than the commonality requirement of Rule 23(a)(2). See Amchem Products, 591 U.S. at 623. RMA argues that common issues do not predominate because the class is ill-defined. Liability in this case is predicated on RMA's alleged repeated collection of funds to which it was neither authorized nor entitled, and whether this alleged conduct violated the FDCPA and the Illinois Consumer Fraud Act. The potential factual variations in each of the putative class members' claims regarding consent or absence thereof virtually guarantees that individual questions will predominate shared ones.

The final requirement for certification under Rule 23(b)(3), is a finding that a class action is the superior means of adjudicating the controversy. In making this determination, the court is required to make findings regarding "(a) the interest of members of the class in individually controlling the prosecution . . . of separate actions; (b) the extent and nature of any litigation concerning the controversy already

commenced by . . . members of the class; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; [and] (d) the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3). As discussed earlier, numerous factual considerations regarding authorization and consent that are present in the instant case dictate that a class action would not provide a superior means of adjudicating the controversy.

Here, the interest of potential members of the class in individually controlling the prosecution of separate actions must be afforded due consideration. The circumstances surrounding each transaction that members of the putative class entered into may differ from one case to the next. Grouping the causes of action together may not allow for the full and fair presentation of those specific circumstances.

Next, the extent and nature of any litigation concerning the controversy already commenced and the desirability or undesirability of concentrating the litigation of the claims in this forum does not require substantial consideration by this court, as we are unaware of any actions already commenced, in this forum or in any other, concerning this controversy.

Finally, in considering the difficulties likely to be encountered in the management of a class action, we must again contemplate the differing factual scenarios that come into play regarding the issue of consent. This creates an obstacle

-14-

in determining which putative class members would actually fall into the class definition. As several of the threshold requirements under Rule 23(a) have not been satisfied, and determination of Rule 23(b) factors also pose obstacles, class certification is inappropriate.

## CONCLUSION

Based on the foregoing analysis, we find that class certification would not provide an efficient nor appropriate means to resolve the present matter. Accordingly, Cocke's motion for class certification is denied.

_____
Charles P. Kocoras
Chief Judge
United States District Court

Dated: NOV - 4 2004